UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MYKALE GARRETT,

      Plaintiff,

                                         Case No. 09-CV-12581-DT

v.

                                         HONORABLE DENISE PAGE HOOD

AMERITECH SERVICES, INC.,

      Defendant.

_____/

**MEMORANDUM OPINION AND ORDER**

**I.**     **BACKGROUND/FACTS**

      On July 1, 2009, Plaintiff Mykale Garrett ("Garrett") filed the instant suit against Ameritech Services, Incorporated ("Ameritech")[1] alleging two-counts of racial discrimination based on Title VII, 42 U.S.C. § 2002 *et seq.* (Count I) and Michigan's Elliott-Larsen Civil Rights Act, M.C.L. 37.2101 *et seq.* (Count II).

      Garrett, an African-American, was hired by Ameritech in 1995.  Garrett claims that she received positive feedback regarding her work.  She served in a variety of positions, receiving regular raises, promotions and positive performance evaluations.  Garrett was eventually promoted to Sales Manager in August 2007 in the department involving the door-to-door sales of the new U-Verse product.  Garrett claims the door-to-door sales representatives were dysfunctional and did not achieve the sales performance set by Ameritech.  Most of the door-to-door sales representatives were laid off in September 2007.

_____

      [1] The Complaint originally named AT&T Teleholdings, Inc., d/b/a AT&T Midwest, and Ameritech Services, Inc., d/b/a AT&T Midwest Services, as Defendants.  The parties entered into a stipulation and order dismissing with prejudice AT&T Teleholdings, Inc., d/b/a AT&T Midwest.  (Doc. No. 9, 8/19/2009)

On September 7, 2007, one of the laid off employees, Gina Lonczynski ("Lonczynski"), sent an email to Jennifer Jones, Vice President and General Manager of Michigan Consumer Services, complaining about the management team and that she was exposed to unwanted sexual comments by Joe Fuhrman ("Fuhrman"), another Sales Manager in the management team over the door-to-door representatives. Lonczynski indicated that Garrett had discouraged her from making sexual allegations against Fuhrman because such harassment was common in the company. Lonczynski also indicated that Garrett set a mandatory meeting for the representatives at Trump's strip club. Jones initially placed a note in Garrett's employment file indicating that Lonczynski's allegations lacked proof. Cheryl O'Hara, the Senior EEO Consultant for Ameritech in Chicago, investigated Lonczynski's complaint.

In the course of her investigation, O'Hara interviewed Lonczynski, Garrett, another employee, Isaac Threatt, as well as other representatives. O'Hara received emails in response to the investigation from other door to door sales representatives, Barb Cronan, Marti Carter and Cecil Carter. Cronan in her December 2007 email alleged that Garrett's husband, in the presence of Fuhrman and Garrett, committed a sexual assault against Cronan. Cronan, Marti Carter and Cecil Carter, all currently have pending lawsuits against Ameritech which are not before this Court. Their complaints allege that Garrett participated in a sexually hostile workplace environment while employed at Ameritech.

On January 23, 2008, Garrett called Ameritech's ethics hotline alleging discrimination based upon the biased way the investigation of allegations against her was conducted. She claimed that white subordinate employees, except the Carters and Threatt who are African American, conspired to sue the company by making false allegations of sexual harassment by Garrett. Garrett's

2

complaint was initially assigned to O'Hara but was later reassigned to Marybeth Dunne, a Senior
EEO Consultant in the Chicago office.

Dunne spoke with O'Hara about Garrett's complaint before speaking with Garrett. At the
time O'Hara spoke to Garrett about her complaint, Dunne already knew that O'Hara's
recommendation as to the Lonczynski complaint was to terminate Garrett. Dunne did not inform
O'Hara that Garrett was claiming racial discrimination in the way O'Hara was conducting the
Lonczynski complaint. Dunne closed Garrett's complaint telling O'Hara that Garrett's complaint
was based on her concern that O'Hara's investigation was taking too long. Garrett claims that her
complaint was closed without investigation of her racial discrimination claim. Jones, accepting
O'Hara's recommendation, terminated both Fuhrman and Garrett's employment on February 4, 2008
for violations of the company's Code of Business Conduct.

Garrett claims that her own complaint of racial discrimination was not investigated at all and
was summarily dismissed. Garrett asserts she was terminated because of her race. Garrett filed a
discrimination charge with the Equal Employment Opportunity Commission ("EEOC") on February
21, 2008. She received a right to sue letter from the EEOC and then filed the instant suit on July 1,
2009.

This matter is now before the Court on Ameritech's Motion for Summary Judgment. A
response and reply have been filed.

II.     **ANALYSIS**

    A.     **Standard of Review**

Ameritech moves for summary judgment under Rule 56(c) of the Rules of Civil Procedure.
Rule 56(c) provides that summary judgment should be entered only where "the pleadings,

depositions, answers to the interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The presence of factual disputes will preclude granting of summary judgment only if the disputes are genuine and concern material facts. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. Although the Court must view the motion in the light most favorable to the nonmoving party, where "the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). If, after sufficient opportunity for discovery, the non-moving party cannot meet that burden, summary judgment is clearly proper. *Celotex Corp.,* 477 U.S. at 322-23. Summary judgment must be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. *Celotex Corp.*, 477 U.S. at 322-23. A court must look to the substantive law to identify which facts are material. *Anderson*, 477 U.S. at 248.

### B.    Prima Facie Case of Race Discrimination

#### 1.    *McDonnell Douglas* Burden Shifting Approach

Ameritech claims that Garrett  is unable to show a *prima facie* case of race discrimination. Racial discrimination claims under both Title VII and the Michigan Elliott-Larsen Civil Rights Act

are analyzed under the burden shifting approach developed for Title VII cases in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1972). *Newman v. Federal Express Corp.*, 266 F.3d 401, 406 (6th Cir. 2001); *Allen v. Comprehensive Health*, 222 Mich. App. 426, 429 (1997). A plaintiff must establish a *prima facie* case and creates a presumption of discrimination by a preponderance of the evidence: (1) that he/she belongs to a protected class; (2) that he/she was subjected to an adverse employment action; (3) that he/she was qualified for the job; and (4) that he/she was treated differently from similarly situated employees from a non–protected class. *McDonnell Douglas*, 411 U.S. at 802; *Talley v. Bravo Pitino Restaurant*, 61 F.3d 1241, 1246 (6th Cir. 1995); and *Wilcoxon v. Minnesota Mining & Mfg. Co.*, 235 Mich. App. 347, 361 (1999). Alternatively, a plaintiff could establish a *prima facie* case by presenting credible, direct evidence of discriminatory intent.[2] *Terbovitz v. Fiscal Court of Adair County*, 825 F.2d 111 (6th Cir. 1987).

If a plaintiff proves a *prima facie* case, the burden of persuasion shifts to the employer to articulate some legitimate, nondiscriminatory reason for the employment decision. *McDonnell Douglas*, 411 U.S. at 802. Once the employer carries this burden, the burden then shifts back to plaintiff to prove by a preponderance of the evidence that the legitimate reasons offered by the employer were not its true reasons, but were a pretext for discrimination. *Id.*; *Ang v. Proctor & Gamble Co.*, 932 F.2d 540, 548 (6th Cir. 1991). The plaintiff may meet this burden by showing: 1) that the stated reasons had no basis in fact; 2) that the stated reasons were not the actual reasons; or 3) that the stated reasons were insufficient to explain the employer's action. *Wheeler v. McKinley Enters.*, 937 F.2d 1158, 1162 (6th Cir. 1991). The burden of persuasion always remains, however, with the plaintiff. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 511 (1993).

---

[2] Garrett does not assert or argue a direct evidence claim of racial discrimination.

## 2.      Similarly Situated

Ameritech moves for summary judgment based on its contention that Garrett is unable to show that she was treated differently from similarly situated employees from a non–protected class. *McDonnell Douglas*, 411 U.S. at 802.  Garrett responds that she has provided sufficient genuine issues of material fact on this factor for the Court to deny Ameritech's motion.

Based on the evidence submitted by the parties, it appears that Garrett satisfies the first three factors in a *prima facie* racial discrimination claim:  1) Garrett, an African American, is a member of a protected group; 2) Garrett was subject to an adverse employment action when she was terminated by Ameritech in February 2008; and 3) Garrett was qualified for the managerial position she held at the time of her termination, given her experience with the company.  *Id.*

Ameritech claims that Garrett has made no allegation, nor provided any evidence, that a particular employee who is not an African American faced with the same situation as Garrett was treated differently.  Ameritech asserts that, to the contrary, a white employee, Fuhrman, who was also a manager with the same department as Garrett, was terminated based on sexual harassing statements and actions.  Ameritech claims that after Lonczynski filed her sexual harassment complaint and general complaint about the managerial staff, O'Hara investigated the matter.  O'Hara initially interviewed the complaining employee, the managers and several witnesses.  O'Hara's investigation expanded when additional witnesses came forward with claims against both managers, Fuhrman and Garrett.  O'Hara took substantial notes on the interviews of:  1) Lonczynski; 2) Threatt; 3) Kelly Walling; 4) Victoria Douglas; 5) Matthew Edwards; 6) Jeff Owens; 7) Cronan (and written statement); 8) Marti and Cecil Carter (written statements); 9) Jessica Savoie; 10) Garrett;

6

and, 11) Fuhrman (Ex. to Ameritech's Motion, RFPD Excerpts).  O'Hara then prepared a summary of her findings (Ex. to Ameritech's Motion, RFPD Excerpts at 14-19)

A summary of O'Hara's findings, include:  1) Garrett invited her employees to her home for a party where Garrett encouraged her husband to force an employee to her knees at which time he took out his penis and hit the employee on her forehead; 2) Garrett propositioned the employee for threesome sex with Garrett and her husband; 3) Garrett went to a strip club for a late lunch with Fuhrman and several subordinate employees; and 4) Garrett offered an employee money to strip for her and her husband.  (Ex. to Ameritech's Motion, RFPD at 14-19)  Ameritech claims Garrett denied the allegations, but Garrett testified to the following at her deposition:  1) Garrett admits to going to a strip club for lunch with Fuhrman where several employees showed up (Garrett Dep. at 148-49); 2) Garrett was present in the office when Fuhrman told a female employee she could make a lot of money as a stripper and Garrett said nothing (Garrett Dep. at 149-59); 3) Garrett, while at lunch with other employees, discussed Garrett's husband exposing and striking Cronan with his penis and Garrett made a joke out of it indicating that her husband would not do anything else since he was not interested in Cronan (Garrett Dep. at 151-52); 4) Garrett admits she visited the strip clubs, typically at 3 or 4 p.m. and that she probably made the comment to other employees that she frequented the strip clubs, but kept her head down looking at the prime rib so she would not see the strippers (Garrett Dep. at 160-61, 183-84)

Ameritech claims O'Hara recommended to Jones, the ultimate decision maker, that both Garrett and Fuhrman be terminated.  O'Hara does not have the authority to make employment decisions but is able to make recommendations based upon her findings.  (O'Hara Dep. at 85-87, 93)  Jones reviewed O'Hara's report and recommendation.  Jones decided to accept the

recommendation based on the reports and her own direct experience with Garrett and Fuhrman. Jones terminated Garrett and Fuhrman for poor judgment with subordinate personnel which violated the company's Code of Business Conduct and EEO Policy, specifically regarding sexual harassment. (Jones Dep. at 39-41, 47; Ex. to Ameritech's Motion, RFPD at 19; Jones Dep. 40-41)  Ameritech argues that Fuhrman, another manager and an employee similarly situated with Garrett, was not treated differently or better than Garrett.

As to Garrett's claim at her deposition that the decision maker, Jones, terminated Garrett because of her race, Ameritech argues that Jones is also an African American.  Cases have held that when the decision-maker is the same protected class as the plaintiff, an inference of discrimination is weakened or the likelihood of discrimination is lessened.  *Howell v. Canton City Sch. Dist. Bd. of Educ.,* 1997 WL 413630 (6th Cir. Jul. 17, 1997).  Ameritech claims Garrett has submitted no evidence that Jones terminated Garrett because of Garrett's race.

Garrett argues in response to the motion that Ameritech's attempts to classify her as similarly situated to Fuhrman "is nothing more than Defendant's attempt to insulate itself from liability from three separate lawsuits, by showing that an employee complaining of sexual harassment was benefitted with an investigation and the remedial action of termination of both involved employees." (Resp., p. 10)  Garrett goes on to argue that there remains a question of fact as to whether Ameritech offered a legitimate non-discriminatory reason for Garrett's discharge.  Garrett claims there is a disagreement as to what occurred in connection with the allegations of wrongdoing against Garrett. (Resp., p. 10)  Garrett asserts that she has established sufficient direct and circumstantial evidence that Ameritech's proffered reason is pretextual.  (Resp. at 11)

8

Other than noting that Ameritech's classification that Garrett was similarly situated to Fuhrman, Garrett does not address nor further identify an employee who is not an African American who was similarly situated as Garrett and treated differently or better than Garrett. The arguments and facts cited in Garrett's response brief go to the issue of pretext, which the Court cannot reach if Garrett is unable to show a *prima facie* case of discrimination. Garrett has failed to establish a *prima facie* case of discrimination based on race because she has not identified or shown that an employee, who is not a member of her protected group and is similarly situated to Garrett, was treated differently or better than Garrett. The only employee identified by Ameritech as similarly situated to Garrett was treated the same as Garrett. Fuhrman, a Caucasian holding the same position as Garrett, was terminated by Ameritech for the same reason as Garrett. Garrett has submitted no evidence to create a genuine issue of material fact as to this factor. Garrett's complaint must be dismissed for failure to establish a *prima facie* case of racial discrimination.

## III.  CONCLUSION

For the reasons set forth above,

IT IS ORDERED that Ameritech's Motion for Summary Judgment **[Doc. No. 27, filed 6/10/10]** is GRANTED.

IT IS FURTHER ORDERED that this action is DISMISSED with prejudice.

s/Denise Page Hood_____
Denise Page Hood
UNITED STATES DISTRICT JUDGE

Dated:  March 15, 2011

9

I hereby certify that a copy of the foregoing document was mailed to the attorneys of record on this date, March 15, 2011, by electronic and/or ordinary mail.

s/Felicia Moses for LaShawn R. Saulsberry
Case Manager, (313) 234-5165

10